IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PAULA J. AKINS,

    Plaintiff,                    No. CIV S-04-2292 CMK

    vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.                <u>ORDER</u>

                            /

        Plaintiff, who is proceeding with counsel, bring this action seeking judicial review of a final decision of defendant Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). Currently before the court are the plaintiff's motion for summary judgment (doc. 9) and defendant's cross motion for summary judgment. (Doc 14.)  As both parties have consented to magistrate jurisdiction, the motions are before the undersigned for decision. For the reasons reflected below, plaintiff's motion is DENIED and the Commissioner's motion is GRANTED.

///

///

///

///

## I. BACKGROUND

Plaintiff applied for Disability Insurance Benefits (DIB) on May 1, 2001, based on disability due to fibromyalgia, arthritis, asthma, irritable bowel syndrome, and migraine headaches. Plaintiff claimed that she had been disabled since May 22, 1999. At the time of her administrative hearing, plaintiff was fifty-nine years old. She has an associate's degree in accounting and most recently worked as an accountant for Sacramento County and as an administrative service assistant for Sacramento County.

Plaintiff's claims were initially denied. Following denial of her request for reconsideration, plaintiff requested an administrative hearing, which was held before Administrative Law Judge (ALJ), Antonio Acevedo Torres, in November 2002. On December 20, 2002, the ALJ issued an unfavorable decision. Plaintiff filed a request for review with the Appeals Council. The Appeals Council vacated the ALJ's December 20, 2002 decision and remanded the case with instructions to give further consideration to the medical source opinions, particularly to the opinions of treating physicians Heather Bevan, M.D. and Michael T. Barger, M.D, and, if warranted, to obtain evidence for a vocational expert.

The ALJ held supplemental hearings in January 2004, and on February 27, 2004, and again, issued an unfavorable decision to plaintiff. In his February 27, 2004 decision, the ALJ found that plaintiff's past work experience as an accountant and administrative assistant involved prolonged sitting and lifting of not more than ten pounds and occasional standing, walking and lifting of not more than twenty pounds. He noted that these jobs did not require repetitive bending, stooping, crouching, and overhead reaching. Therefore, the ALJ concluded that plaintiff was fully capable of performing her past relevant work and was not disabled within the meaning of the Social Security Regulations.

## II. STANDARD OF REVIEW

This court's review is limited to whether the Commissioner's decision to deny benefits to plaintiff is based on proper legal standards under 42 U.S.C. § 405(g) and supported

2

by substantial evidence on the record as a whole. See Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance, Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorensen v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The court must consider both evidence that supports and evidence that detracts from the Commissioner's decision, but the denial of benefits shall not be overturned even if there is enough evidence in the record to support a contrary decision. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## III.  DISCUSSION

In her motion for summary judgment, plaintiff argues that the ALJ erred in six ways.[1] Plaintiff claims that (1) the ALJ failed to give appropriate weight to the opinions of plaintiff's treating physicians, Dr. Bevan and Dr. Barger; (2) the ALJ failed to follow the remand order; (3) the ALJ failed to properly consider plaintiff's fibromyalgia; (4) the ALJ failed to consider the combined effect of plaintiff's impairments; (5) the ALJ failed to consider plaintiff's symptom testimony; and (6) the ALJ erred in not calling a vocational expert. Defendant Commissioner contends that the only issue is whether the final decision finding that plaintiff was

---

[1] Although plaintiff raises seven issues in her motion for summary judgment, the seventh issue is that the decision in this case should be reversed and benefit payment ordered rather than remanded back to the ALJ for a second time.

3

not disabled is supported by substantial evidence and is free of reversible error.

### A.     Opinions of Treating Physicians

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinions of her treating physicians. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. See Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual, than the opinion of a non-treating professional. See id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987). The least weight is given to the opinion of a non-examining professional. See Pitzer v. Sullivan, 908 F.2d 502, 506 & n.4 (9th Cir. 1990).

In addition to considering its source, to evaluate whether the Commissioner properly rejected a medical opinion the court considers whether: (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. The Commissioner may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons supported by substantial evidence in the record. See Lester, 81 F.3d at 831. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by an examining professional's opinion which is supported by different independent clinical findings, the Commissioner may resolve the conflict. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). A contradicted opinion of a treating or examining professional may be rejected only for "specific and legitimate" reasons supported by substantial evidence. See Lester, 81 F.3d at 830. This test is met if the Commissioner sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states her interpretation of the evidence, and makes a finding. See Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989). Absent specific and legitimate reasons, the Commissioner must defer to the opinion of a treating or examining professional. See Lester, 81 F.3d at 830-31. The opinion of a non-examining

professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. See id. at 831. In any event, the Commissioner need not give weight to any conclusory opinion supported by minimal clinical findings. See Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (rejecting treating physician's conclusory, minimally supported opinion); see also Magallanes, 881 F.2d at 751.

With respect to the opinions of plaintiff's treating physicians, Dr. Bevan and Dr. Barger, the ALJ summarized the record as follows:

> In December of 1998, the claimant was examined by Dr. Michael T. Barger, who consistently noted that her subjective complaints were not supported by diagnostic findings. She described changes in her neck, which was not documented by x-ray. Minimal changes were noted in her lumbar spine. He found that she had some decreased range of motion and some degree of osteoarthritis in her knees and likely in her hands. He also noted a possibility of spinal stenosis, but again, noted minimal changes on x-ray. Although she had weight gain of uncertain etiology Dr. Barger noted that her thyroid tests had been normal. He thought that decreased activity level with continued caloric intake was the cause of her weight gain. Although she had positive ANA the doctor noted that there was no suggestion of connective tissue disease. He doubted that the finding was of any clinical significance (Exhibit 2/F/17).
> In April of 1999 Dr. Barger noted improvement in the claimant's diagnosis. He considered her fibromyalgia syndrome to be moderate at that time. Her osteoarthritis was generalized and mostly symptomatic in her knees and hands. MRI scanning showed no suggestion of disc bulging or spinal stenosis. She had chronic insomnia and he suspected some suggestion of periodic leg movement syndrome. Her weight gain had stabilized (an eight pound weight loss), and the previously positive ANA was negative with no suggestion of connective tissue disease. At that point he estimated that she was able to sit for four hours in an 8-hour workday, stand for 2 hours and walk for 1 hour. He estimated that she could occasionally bend, squat, reach above her shoulders, kneel, and push/pull. He further estimated that she could occasionally lift up to 34 pounds. He noted her major problem as one of fatigue, endurance limitation, and concentration, as well as diffuse pain. He reported that he felt she would have difficulty continuing her occupation as a supervisor in accounts receivable (Exhibit 2F/9-13).
> On April 30, 1999, the claimant's other treating physician, Dr. Heather Bevan concurred with Dr. Barger's opinion about her ability to continue working. The claimant had requested early retirement for medical reasons, she felt that she had been missing more work due to her impairments and medications she had to take. Dr. Bevan's assessment of her ability to work was much more pessimistic than Dr. Barger's. Dr. Bevan recorded that she could only sit 1 hour in an 8-hour workday, stand for 15-30 minutes, and walk for 15 minutes. According to Dr. Bevan, the claimant could not bend, squat, crawl, climb, crouch, kneel, or balance for any length of time. The claimant could only lift up to 24 pounds. Unlike Dr. Barger, Dr. Bevin concluded that the claimant was limited by

>medications she took for her migraines (Ex. 2F/6-8).
>
>In September of 1999, Dr. Barger recorded that she felt her condition was fairly stable. She was taking Relafen which helped her artheritis fairly well. Her restless leg syndrome had improved overall with Clonazepam. Her sleeping pattern was somewhat better. She had some mild morning stiffness and gelling phenomenon, but had no nausea or dyspepsia (Ex. 9F/18).
>
>...In July of 2001 Dr. Barger noted that she had typical fibromyalgia tender points but no red-hot swollen joints or joint tenderness. He advised her to continue her medicinal regimen, but to decrease her dosage of Impramine (Ex. 13F/34-35).

(TR at 36, 37.) Plaintiff's treating physicians' opinion as to plaintiff's residual functional capacity conflicts with that of state agency physician Dr. Heather Bloom who opined less restrictive sitting, standing and walking limitations. Dr. Bloom opined that plaintiff could stand and walk six to eight hours during an eight-hour work day with normal breaks. Dr. Bloom did find limitations on plaintiff's lifting ten pounds frequently and twenty pounds occasionally, and recommended that plaintiff not bend, stoop, or crouch on the job. (TR at 215-220.)

In 2001, a state agency opinion assessed plaintiff as being able to perform light work activity with limitations on overhead reaching, stooping, bending, crouching and crawling. (TR at 221-228.) In 2002, a state agency opinion again assessed plaintiff as being able to perform light work activity, with sitting and standing up to six hours in an eight-hour workday, and noted that there was minimal evidence in the record of plaintiff's fibromyalgia. (TR at 281-288.)

In 2003 consultative internist, Dr. Jewel Johl examined plaintiff and found that plaintiff's cardiac, respiratory, cranial nerve, and neurological testing were all normal, straight leg raising was negative, spasms were slight and ambulation was normal, though some limitations were present in the neck and back range of motions. Dr. Johl also found positive trigger points in plaintiff's upper body. Dr. Johl also considered the previous findings of Drs. Barger, Bevan and Bloom. Upon these findings, Dr. Johl opined that plaintiff could perform prolonged sitting and walking, lift more than ten pounds, occasionally lift more than twenty

pounds and engage in repetitive pushing or pulling.  (TR at 348-353.)

To the extent that the ALJ rejected the opinions of Dr. Barger and Dr. Bevan in favor of the contradictory opinions of Dr. Bloom, Dr. Johl and the other state agency physicians, the ALJ is required to give specific and legitimate reasons for doing so.  See Lester, 81 F.3d at 830.  The ALJ gave the following rationale as to the weight given to Dr. Barger's and Dr. Bevan's opinions:

> [The functional assessments of Dr. Barger and Dr. Bevan] are lacking in credibility because: (1) they are at odds with the recent consultative internist examination.[2]  (2) Medical treatment records have consistently documented substantial improvement in the claimant's condition.  (3) [The opinions of Dr. Barger and Dr. Bevan] appear to have been based upon the claimant's self-serving subjective statements. (4) The doctors' supporting progress notes do not contain significantly abnormal objective clinical findings. (5) The assessments of the doctors' are not consistent with substantially normal X ray and ANA results.

(TR at 21.)  The ALJ concluded that the functional assessments of plaintiff's treating physicans were not credible.  The question before this court is whether this is a specific and legitimate finding supported by substantial evidence in the record.

The court finds that the ALJ's rational is supported by substantial evidence.  The record reveals that the treating physicians' notes reflect plaintiff's subjective complaints and very little objective clinical findings which would support plaintiff's assertions.  (TR at 171-201.)  For example, a chart note states that, when plaintiff returned for a follow-up of chronic headaches, she was "generally doing better."  (TR at 199) Plaintiff related that her headaches were "less frequent and severe than they were previously."  (Id.)  Moreover, the medical records indicate that plaintiff's symptoms were responsive to medication.  See Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983) (stating that controllable impairments are not disabling); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)(stating that inability to work without some discomfort is insufficient to satisfy the test for disability).

---

[2]This refers to the 2003 examination by Dr. Johl.

7

Dr. Barger's and Dr. Bevin's April 1999 functional assessments indicate limitations which are not supported by objective clinical findings or by their other medical findings. (TR at 183-184, 186-187, 248-280, 311-347.) The functional assessment of Dr. Johl is supported by both the opinions of the state agency reviewing physicians who found that plaintiff could do light work and by the other medical treatment records which indicate that plaintiff has been doing fairly well and responding to medications. (TR at 20, 222-225, 285-288.) See Thomas, 278 F.3d at 957 (non-examining physician's opinion is substantial evidence when consistent with independent clinical findings or other evidence in the record). In his summary of the facts and conflicting clinical evidence, the ALJ set forth the conflicts between plaintiff's subjective complaints and the objective findings in the medical records. (TR at 20, 36-38.) The ALJ specifically noted that the progress notes in plaintiff's medical records generally indicated that plaintiff was doing fairly well and that her symptoms were being alleviated by medications. (TR at 20.) See Heckler, 707 F.2d at 440.

In summary, the ALJ indicated that he discredited the assessments of plaintiff's treating physicians because their assessments could not be supported by objective medical evidence from any of plaintiff's medical examinations. The ALJ weighed the evidence and acted in accordance with his duty to determine the credibility of the evidence and gave specific, legitimate reasons for discrediting particular opinions. See Thomas, 278 F.3d at 958.

  **B.**  **Failure to Follow the Remand Order**

Plaintiff contends that the ALJ erred by failing to follow the remand order. The remand order directed the ALJ to (1) obtain available updated treatment records; (2) address all relevant medical opinion evidence of record providing supporting weight for the weight assigned thereto and; (3) if warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitation on the claimant's occupational base. (TR at 95).

Plaintiff contends that the ALJ erred on remand by failing to re-address the treating physicians' opinions and the weight given to them and, instead, incorporating by

reference the summary and discussion of the medical evidence in his prior decision.

The court concludes that the ALJ complied with the remand order by supplementing his previous credibility assessment and by ordering an examination with consultative internist Dr. Johl to obtain updated treatment records for plaintiff. The ALJ supplemented his previous assessment of the weight given the opinions of Dr. Barger and Dr. Bevan with specific reasons based on substantial and legitimate evidence in the record. The ALJ's incorporation of his previous discussion of medical records did not violate the remand order. Accordingly, the court concludes that ALJ properly followed the remand order.

### C.   Failure to Properly Consider Plaintiff's Fibromyalgia

The plaintiff has the initial burden of proving that she is disabled within the meaning of the social security act. See Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). The burden of proof on the issue of disability switches to the Commissioner only if step five of the sequential evaluation is reached. See Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir.1989). Here, the Commissioner did not reach step five.

Plaintiff contends that the ALJ erred in failing to properly consider her fibromyalgia as a disabling condition. Plaintiff points out that the Ninth Circuit recognizes this condition as potentially disabling. Contrary to plaintiff's assertions, the ALJ did consider plaintiff's fibromyalgia. (TR 20, 35, 36.) As noted above, the ALJ concluded that plaintiff's fibromyalgia was not of the severity required to establish disability. The ALJ considered the conflicting clinical findings and that plaintiff's subjective complaints were not supported by objective medical evidence. The ALJ also considered that plaintiff's treating physician, Dr. Barger, consistently reported that plaintiff was improving or responding to medication. Accordingly, the court finds that the ALJ properly considered plaintiff's fibromyalgia.

### D.   Failure to Consider the Combined Effect of Plaintiff's Impairments

Plaintiff claims that the ALJ failed to consider the cumulative effect of her physical impairments. The record shows that the ALJ considered that plaintiff had chronic,

severe fibromyalgia, degenerative arthritis, irritable bowel syndrome, asthma, and migraine headaches. (TR 20.) As previously discussed, there is substantial evidence in the record which supports the ALJ's finding that plaintiff is not precluded from performing her past relevant work as a accountant and administrative assistant, which involved prolonged sitting, lifting of not more than ten pound and occasional standing. (TR at 188 (treatment note from plaintiff's treating physician that plaintiff finds it difficult to sit for more than five or six hours a day)). Accordingly, the court finds that the ALJ properly considered the commutative effect of plaintiff's impairments. See Blacknall v. Heckler, 721 F.2d 1179, 1181 (9th Cir. 1983).

### E. Failure to Find Plaintiff's Subjective Complaints Credible

Plaintiff next challenges the ALJ's finding that plaintiff's testimony regarding her inability to work was not credible. If the ALJ finds claimant's testimony as to the severity of her pain and impairments unreliable, then the ALJ must make a credibility determination with enough specificity to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. See Thomas, 278 at 958-59; Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). In determining whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. See Bunnell, 947 F.2d at 344. The ALJ may also consider the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment and the applicant's daily activities. See Smolen, 80 F.3d at 1284. The ALJ cannot be expected to believe every allegation, or else disability benefits would be available for the asking, a result plainly contrary to the Act. See Fair, 885 F.2d at 603. If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second guessing. See Morgan v. Comm'n of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999).

The court finds that the ALJ's credibility determination is supported by substantial evidence in the record. The ALJ considered that plaintiff's complaints were not

supported by objective medical findings in the record.  See Tonepetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001)(stating that the ALJ may properly consider medical evaluations which discredit subjective complaints).   The ALJ considered that the medical records from plaintiff's treating physicians indicated that plaintiff's condition had improved with treatment. (Tr. 16-22, 30-40.)  The ALJ also considered plaintiff's daily activities, including that plaintiff cared for her personal needs, drove, shopped, did laundry, and provided a home for her grandchildren.  (Id.)  Finally, the ALJ noted that, although plaintiff complained of multiple severe impairments beginning in May of 1999, she was able to endure her pain and discomfort until she filed for benefits in May 2001.  (TR at 38.)  See Magallanes v. Bowen, 881 F.2d at 755 (stating that the ALJ may draw inferences from the evidence).  Accordingly, the court finds that the ALJ's credibility decision is supported by substantial evidence and must be affirmed.

### F.    Failure to Call a Vocational Expert

Plaintiff's final claim is that the ALJ erred by failing to call a vocational expert. Plaintiff specifically argues that the ALJ should have called a vocational expert because there was evidence that plaintiff had a nonexertional limitation and because the Appeals Council's remand order called for a vocational expert, if warranted.  The claimant has the burden of showing that she cannot perform her past relevant work. See Orteza v. Shalala, 50 F.3d 748, 751 (9th Cir. 1995).  If the claimant can perform her prior work, the burden of proof remains with her; vocational expert testimony may be helpful, but is not required.  See Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993)(stating that vocational expert testimony helpful, but not necessary in past work finding); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996).  The ALJ considered that plaintiff was limited in her ability to bend, stoop, crouch and reach overhead. The ALJ found that plaintiff's past work as an accountant and administrative assistant required prolonged sitting, lifting of not more than ten pounds, and occasional standing, walking and lifting twenty pounds and did not require repetitive bending, stooping, crouching and overhead reaching, and, therefore, found that plaintiff could perform her past work. (TR at 21).  Because

the ALJ found that plaintiff could perform her past work, the use of a vocational expert was not necessary.  See Crane, 76 F.3d at 255.  Accordingly, the court finds that the ALJ did not err by not calling a vocational expert.

Plaintiff's final contention in her motion for summary judgement is that this case should be reversed rather than remanded.  As the court finds that the Commissioner's decision was supported by substantial evidence in the record, the court need not consider this argument.

**IV.    CONCLUSION**

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

   1. Plaintiff's motion for summary judgment or reversal is denied,

   2. The Commissioner's cross motion for summary judgment is granted and;

   3. The Clerk of the Court is directed to enter judgment and close this file.

DATED:  March 23, 2006.

```
                                      _____
                                      CRAIG M. KELLISON
                                      UNITED STATES MAGISTRATE JUDGE
```